**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION** | MDL Docket No. 1:22-md-03035-STA-jay <br><br> ALL CASES <br><br> Honorable S. Thomas Anderson |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH AME DEFENDANTS AND DEFENDANT NEWPORT GROUP, INC.**</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

    I.    FACTUAL AND PROCEDURAL BACKGROUND. ........................... 4

    II.    SUMMARY TERMS OF THE SETTLEMENTS. ................................. 8

        A.  The Class Definition ................................................................. 8

        B.  Settlement Benefits & Other Relevant Provisions in the Agreements............ 9

        C.  Attorneys' Fees and Costs and Service Awards ............................................. 13

    III.    THE COMPLETED NOTICE PLAN SATISFIES DUE PROCESS AND RULE 23 ............................................................... 14

        A.  The Class Notice Plan Was Effectively Administered ................................... 14

        B.  There Were Two Objections and No Opt-Outs ............................................. 15

    IV.    NOTICE WAS PROVIDED UNDER THE CLASS ACTION FAIRNESS ACT ............................................................... 16

    V.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ............................................................... 16

    VI.    THE COURT SHOULD FINALLY APPROVE BOTH SETTLEMENTS......... 17

        A.  Legal Standard for Final Approval Under Rule 23 and in the Sixth Circuit ............................................................... 18

        B.  The Settlements Both Satisfy the Requirements of Rule 23for Final Approval Under Rule 23(e) ................................................................... 19

        C.  Evaluation of the *UAW* Factors Further Supports Final Settlement Approval ............................................................... 24

        D.  The Two Objections Should be Overruled................................................... 27

CONCLUSION................................................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1988 Trust for Allen Children v. Banner Life Insurance Company*,
   28 F.4th 513 (4th Cir. 2022) ....................................................................30

*In re AME Church Employee Retirement Fund Litigation*,
   No. 1:22-md-03035-STA-jay...................................................................4

*In re Art Materials Antitrust Litig.*,
   100 F.R.D. 367 (N.D. Ohio 1983) .......................................................27, 28

*In re Family Dollar Stores, Inc., Pest Infestation Litigation*,
   2023 WL 7112838 (W.D. Tenn. Oct. 27, 2023) ....................................18

*Homesite Insurance Company et al. v. Newport Group Holdings, L.P.,
   Newport Group, Inc.*,
   Case No. 3:25-cv-02626 ..........................................................................28

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v.
   Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ......................................................18, 19, 25

*Moeller v. Week Publications, Inc.*,
   649 F. Supp. 3d 530 (E.D. Mich 2023)...................................................23

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
   833 Fed. Appx. 430 (6th Cir. 2021)........................................................30

*In re T-Mobile Customer Data Security Breach Litigation*,
   2023 WL 11878507 (W.D.Mo. June 29, 2023) ......................................29

*UAW v. Ford Motor Co.*,
   2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ........................... *passim*

**Statutes**

Class Action Fairness Act, 28 U.S.C § 1715 .................................................16

TN Code § 29-11-105 ....................................................................................13

TN Code § 29-11-107(d) ...............................................................................13

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.44
(6th ed. 2022) ...........................................................................................................22

## INTRODUCTION

This Court granted preliminary approval of the AME Settlement and the Newport Settlement on March 24, 2025.[1] The AME Settlement required the AME Defendants to pay $20,000,000 (in cash adjusted to the present value from August 2, 2024 to the date paid) into a non-reversionary Qualified Settlement Fund held in trust for the sole benefit of the Settlement Class Members. *See* (ECF No. 750-2) (hereinafter the "AME Agreement" or "AME Agmt.").[2] The AME Defendants made their final payment into the Qualified Settlement Fund (the "QSF") on May 30, 2025. **Exhibit A**, Declaration of Alex Thomas on behalf of Verita Global LLC (hereinafter "Verita Decl."), ¶ 13. The AME Settlement also creates affirmative governance duties for the AME Church that will help ensure responsible management of its retirement benefits plan moving forward. The Newport Settlement required Newport to pay $40,000,000 into the same Qualified Settlement Fund, *see* (ECF No. 750-3) (hereinafter the "Newport Agreement" or "Newport Agmt."), which it did so on April 10, 2025. Verita Decl. ¶ 13. The Settlement Amounts have been earning interest for the benefit of the Class since the day that the AME Defendants and Newport transferred their respective amounts into the QSF. The interest earned by the QSF totaled $289,629.64 as of May 30, 2025, which is in addition to $556,957 in interest the AME Defendants paid when they made their final deposits in May. That puts the total plan balance at $60,846,586.60 as of May 30. Given that the QSF is earning interest currently at 2.75%, we estimate the QSF will

---

[1] The Court's grant of preliminary approval is docketed at ECF No. 774, *Memorandum Opinion and Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with AMEC Defendants and Defendant Newport Group, Inc.* (hereinafter "PA Opinion") and ECF No. 775, *Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with AME Defendants and Defendant Newport Group, Inc.*, (hereinafter "PA Order").
[2] Capitalized terms in this memorandum have the same meanings as they are defined in the AME Agreement and the Newport Agreement.

1

earn an additional \$139,440.09 as of June 30, 2026, and will earn interest at a daily rate of approximately \$4,595.30 in July until the funds are transferred to the Qualified Trust.

After preliminary approval was granted, the appointed Settlement Administrator, Verita Global, LLC, (ECF No. 775, PA Order ¶ 9), distributed notice of both Settlement Agreements to the Class on April 7, 2025, (ECF No. 783). Verita notified the Class directly via first class mail and also via email, to the extent possible, using the mailing addresses and email addresses that the AMEC Department of Retirement Services had on record. Verita Decl. ¶¶ 2-8. The notices sent to the Class included detailed information about the monetary and non-monetary benefits of both Settlements, the process and deadlines for objecting to or opting out of either the AME Settlement and/or the Newport Settlement, and the date of the Final Approval Hearing. *See* (ECF Nos. 750-5, 750-6) (exemplar long form notices attached as exhibits to Plaintiffs' Motion for Preliminary Approval).[3] Class Members had a 60-day period following the Notice Date, to and including June 6, 2025, during which to submit objections and requests for exclusion according to the provisions in the Settlement Agreements. (ECF No. 775, PA Order ¶ 4); *see also* AME Agmt. ¶¶ 2.17, 2.18, 8.0; Newport Agmt. ¶¶ 2.18, 2.19, 8.0. Of the approximately 4,517 Class Members, only 2 filed an objection to the AME Settlement and the Newport Settlement and no class members opted out of the AME Settlement or the Newport Settlement. It is clear that the Settlements were well-received based on this response.

The AME Settlement and the Newport Settlement are the product of three years of hard-fought litigation, including two rounds of motion to dismiss briefing, and extensive fact and third-

---

[3] The separate, long form notice for the 15 Class Members who took full or partial distributions after June 30, 2021, but before the Plan funds were frozen*, see* (ECF No. 750-6), was substantially similar to the long form notice distributed to the vast majority of the Class, *see* (ECF No. 750-5), but it included a short explanation regarding when each of these individuals can expect to receive additional funds recovered in this litigation.

party discovery. Both settlements were reached after several rounds of mediation sessions conducted by experienced, independent mediators. Both settlements fully resolve Plaintiffs' claims against the AME Defendants and Newport and preserve all claims against the Non-Settling Defendants.[4] The approximately $61 million in combined monetary relief represents an enormous step towards making the Class whole. The funds will be disbursed to Settlement Class Members far quicker than they could otherwise be if litigation against the AME Defendants and Newport continued and will provide immediate and certain help to Settlement Class Members who hope to meet their current and ongoing financial obligations without further delay. All told, the approximately $61 million in combined settlement proceeds equals almost 69% of the more than $88 million difference between the represented value of the Plan (roughly $126 million) and the actual value of the Plan in June of 2021 (roughly $38 million).

Plaintiffs respectfully submit that the Settlements each satisfy the standard for final approval set forth Rule 23(e) and as described by Sixth Circuit precedent and request that the Court: (1) grant final approval of both the AME Settlement and the Newport Settlement pursuant to Rule 23(e); (2) formally certify the provisionally-certified Settlement Class and appoint the provisionally-appointed Class Counsel and Class Representatives; and (3) enter a Final Judgment and Order terminating the litigation between Plaintiffs and the AME Defendants, Plaintiffs and Newport, and the AME Defendants and Newport and release claims of Settlement Class Members against the AME Defendants and Newport.

---

[4] "Non-Settling Defendants" means: Defendants Symetra Life Insurance Company ("Symetra"); Daniel Parrish of Parrish Law, LLC, Administrator Ad Litem of the Estate of Jerome V. Harris deceased; Robert Eaton; Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; Motorskill Ventures, Inc.; Motorskill Ventures I, L.P.; Motorskill Asia Ventures 1, L.P.; Rodney Brown and Company; Trinity Financial Consultants, LLC; Sandra Harris; Day and Night Solar, LLC; Doe Corporations 1-10; and John Does 1-10.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, who are pastors and personnel of the AME Church, brought this case following their discovery, in the fall of 2021, that the value of the AMEC Ministerial Retirement Annuity Plan was approximately $88,489,163 less than had been represented to them just weeks prior. In the spring of 2022, six different lawsuits were filed around the country against a number of defendants, including the AME Defendants and Newport. AME Agmt. ¶¶ 1.7-1.8; Newport Agmt. ¶¶ 1.7-1.8. On June 2, 2022, the Judicial Panel on Multidistrict Litigation consolidated those actions into a single MDL proceeding under the caption *In re AME Church Employee Retirement Fund Litigation*, No. 1:22-md-03035-STA-jay, in the Western District of Tennessee. AME Agmt. ¶ 1.8; Newport Agmt. ¶ 1.8.

**Consolidated Amended Complaint.** Plaintiffs thereafter filed a Consolidated Amended Complaint against the AME Defendants, Newport, and most of the Non-Settling Defendants on August 19, 2022.[5] AME Agmt. ¶ 1.9; Newport Agmt. ¶ 1.9. Plaintiffs asserted the following causes of action against the AME Defendants and Newport: (1) breach of fiduciary duty, (2) violation of Tennessee Trust Code, (3) negligence, (4) fraudulent concealment, and (5) fraudulent misrepresentation. AME Agmt. ¶ 1.9; Newport Agmt. ¶ 1.9. Plaintiffs also brought (1) breach of contract, (2) promissory or equitable estoppel, and (3) tort of outrage claims against the AME Defendants. AME Agmt. ¶ 1.9. The AME Defendants answered Plaintiffs on the breach of fiduciary duty and negligence claims and moved to dismiss the rest. AME Agmt. ¶ 1.10. Newport moved to dismiss Plaintiffs' claims. Newport Agmt. ¶ 1.10. The AME Defendants cross-complained against Newport and others, asserting claims for breach of fiduciary duty and negligent

---

[5] Plaintiffs named three additional defendants, none of which have settled with Plaintiffs, in the Second Consolidated Amended Complaint filed in August of 2024. AME Agmt. ¶ 1.15.

misrepresentation. Newport Agmt. ¶ 1.9. Newport moved to dismiss the AME Defendants' claims. Newport Agmt. ¶ 1.10.

**Initial Mediation.** On February 6, 2023, Plaintiffs and the AME Defendants, along with Defendants Newport, Symetra, Dr. Harris, Robert Eaton, and Financial Freedom Group, mediated for the first time with the Honorable Janice M. Holder (Ret.), a former Chief Justice of the Tennessee Supreme Court. AME Agmt. ¶ 1.11; Newport Agmt. ¶ 1.11. That mediation was unsuccessful.

**Motion to Dismiss Opinion and Second Mediation between Plaintiffs and AME Defendants.** On March 17, 2023, the Court granted the AME Defendants' partial Motion to Dismiss, leaving Plaintiffs with only breach of fiduciary duty and negligence claims against the AME Defendants. AME Agmt. ¶ 1.12. The Court partially denied Newport's Motion to Dismiss Plaintiffs' and the AME Defendants' complaints, allowing their claims for breach of fiduciary duty and negligence to proceed. Newport Agmt. ¶ 1.12. Following the motion to dismiss order, Plaintiffs and the AME Defendants mediated again with Justice Holder on May 4, 2023. AME Agmt. ¶ 1.13. Negotiations between Plaintiffs and the AME Defendants reached an impasse following this second mediation session. *Id.*

**AME Defendants' Amended Cross-Complaint.** On July 25, 2023, the AME Defendants filed an amended cross-complaint against Newport, alleging breach of fiduciary duty, negligence, negligent misrepresentation, and punitive damages. Newport Agmt. ¶ 1.13. Newport moved to dismiss the AME Defendants' cross-complaint. *Id.* On February 28, 2024, the Court dismissed the AME Defendants' negligent misrepresentation and punitive damages claims against Newport. Newport Agmt. ¶ 1.14.

**Plaintiffs' Second Consolidated Amended Complaint.** On August 29, 2024, Plaintiffs

filed a Second Consolidated Amended Complaint against Newport, the AME Defendants, and the Non-Settling Defendants. (ECF No. 493.) Plaintiffs asserted the following claims against Newport, derivatively on behalf of the Plan and on behalf of a putative class: (1) violation of Tennessee's Uniform Trust Code, (2) fraudulent concealment, (3) fraudulent misrepresentation, (4) negligence, (5) civil conspiracy, (6) aiding and abetting in a breach of fiduciary duty, and (7) professional negligence. *Id.* Newport partially moved to dismiss Plaintiffs' claims. (ECF No. 521.) Because Plaintiffs and the AME Defendants had not yet finalized the AME Agreement, Plaintiffs asserted four claims against the AME Defendants: (1) breach of fiduciary duty, (2) negligence, (3) fraudulent concealment, and (4) breach of contract. (ECF No. 493.)

**AME Defendants' Second Amended Cross-Complaint.** On September 30, 2024, the AME Defendants moved for leave to file a Second Amended Cross-Complaint against Newport, which the Court granted. (ECF Nos. 539, 568.) Thereafter, the AME Defendants filed a cross-complaint on November 5, 2024, bringing claims against Newport for (1) fraudulent concealment, (2) civil conspiracy to commit conversion, (3) civil conspiracy to commit intentional misrepresentation, (4) civil conspiracy to commit constructive fraud, (5) negligent misrepresentation, (6) professional negligence, (7) breach of fiduciary duty, and (8) aiding and abetting breach of fiduciary duty. (ECF No. 570.) Newport moved to dismiss all of the AME Defendants' claims. (ECF No. 640.) Newport's motions to dismiss were fully briefed and pending at the time of the Newport Settlement.

**Discovery to Date.** The Parties engaged in substantial fact discovery from September 2022 to when Plaintiffs settled with Newport in February of 2025 after settling with the AME Defendants a few months prior in August of 2024. *See* (ECF No. 750-4 at ¶¶ 13-22, *Declaration of Matthew E. Lee in Support of Plaintiffs' Motion for Preliminary Approval of Class Action*

*Settlements with AME Defendants and Defendant Newport Group, Inc.* (hereinafter "Lee Decl.")). Plaintiffs and the AME Defendants took more than 50 depositions of fact witnesses, received and reviewed nearly 1.5 million pages of documents, propounded numerous interrogatories, served nearly two dozen third-party subpoenas, and successfully unspooled the circumstances that led to the Class's losses. *Id.* Additionally, Plaintiffs and the AME Defendants served their initial expert disclosures on January 31, 2025, and have since served their rebuttal expert disclosures on May 23, 2025.

**The AME Settlement.** On July 30, 2024, Plaintiffs and the AME Defendants mediated for a third time with Justice Holder. AME Agmt. ¶ 1.14. As part of the litigation and mediations with the AME Defendants, Plaintiffs investigated the AME Defendants' ability to fund any settlement or potential judgment. AME Agmt. ¶ 1.20. After the third mediation did not result in an agreement, Plaintiffs and the AME Defendants continued to negotiate at arm's length with the assistance of Justice Holder before finally reaching an agreement on the material terms of the AME Settlement. AME Agmt. ¶ 1.14; (ECF No. 750-4, Lee Decl. ¶ 30).

The Settling Parties entered into a Memorandum of Understanding on August 24, 2024, AME Agmt. ¶ 1.17; (ECF No. 750-4, Lee Decl. ¶ 30), and thereafter began negotiating the terms and substance of a long-form settlement agreement, (ECF No. 750-4, Lee Decl. ¶ 44). On November 25, 2024, Plaintiffs and the AME Defendants jointly moved to dismiss Plaintiffs' claims against Defendants Bishop James L. Davis and Bishop Samuel L. Green without prejudice. (ECF No. 586.) On November 27, 2024, the AME Agreement was executed, *see* AME Agmt. at pp. 37-42, and on December 13, 2024, Plaintiffs initially moved for preliminary approval of the AME Settlement, (ECF No. 627).

**The Newport Settlement.** While Newport's motions to dismiss were pending, Plaintiffs,

the AME Defendants, and Newport resumed settlement discussions for the first time since the initial February 2023 mediation. Newport Agmt. ¶ 1.19; (ECF No. 750-4, Lee Decl. ¶¶ 31-32). On December 12, 2024, the Settling Parties held a full day mediation session in Atlanta led by experienced mediator A. Lee Parks, but no agreement was reached. Newport Agmt. ¶ 1.20.

After extensive discussions between Mr. Parks, counsel for Plaintiffs, the AME Defendants, and Newport following the December mediation, the Settling Parties mediated again virtually with Mr. Parks on January 31, 2025. Newport Agmt. ¶ 1.20; (ECF No. 750-4, Lee Decl. ¶ 33). At the conclusion of this lengthy third mediation, Mr. Parks made a triple-blind "mediator's proposal" to the Settling Parties of $40 million which the Settling Parties each accepted by February 3, 2025. Newport Agmt. ¶ 1.21; (ECF No. 750-4, Lee Decl. ¶¶ 33-36). On the morning of February 4, 2025, the Settling Parties entered into a Confidential Term Sheet, Newport Agmt. ¶ 1.22, and thereafter began negotiating the terms and substance of a long-form settlement agreement, (ECF No. 750-4, Lee Decl. ¶ 36). The Newport Agreement was executed on March 4, 2025. *See* Newport Agmt. at 41.

## II.    SUMMARY TERMS OF THE SETTLEMENTS

The AME Agreement and the Newport Agreement contain several identical terms as well as separate and distinct provisions regarding the respective Settlements. The Agreements also directed when the AME Defendants and Newport were to transfer their respective Settlement Amounts into the interest-bearing Qualified Settlement Fund and the Notice Plan for the Settlement Class, which the Court approved and the Settling Parties and the Settlement Administrator have since executed.

### A.    The Class Definition

The Class is defined as "all persons who were participants, or were those participants'

respective beneficiaries entitled to benefits, in the African Methodist Episcopal Church Ministerial Retirement Annuity Plan on June 30, 2021. Defendants are excluded from the Class." AME Agmt. ¶ 2.6; Newport Agmt. ¶ 2.7.

### B.     Settlement Benefits & Other Relevant Provisions in the Agreements

#### 1.     Pecuniary Settlement Benefits

The AME Agreement required that the AME Defendants pay $20 million in cash adjusted to the present value as of August 2, 2024 through the date that the full amount is paid into the Qualified Settlement Fund, an interest-bearing tax-qualified escrow account established for receipt of settlement funds to be held in trust for the sole benefit of the Class Members. AME Agmt. ¶¶ 2.29, 2.23. As of May 30, 2025, the AME Defendants have paid the full AME Settlement Amount, which totaled $20,556,957 because of the present value adjustment, into the Qualified Settlement Fund and they did so in two installment groups: one $10,000,000 payment on November 30, 2024 and a group of four smaller payments in May of 2025 totaling $10,556,957. Verita Decl. ¶ 13. The AME Settlement Amount will not be funded in any way through assessments and/or budget raises to any local churches, annual conferences, or district conferences. AME Agmt. ¶ 3.3.1(b).

The Newport Agreement required that Newport pay $40 million in cash into the Qualified Settlement Fund upon a grant of preliminary approval. Newport Agmt. ¶ 3.4. Newport paid the full amount into the Qualified Settlement Fund on April 10, 2025. Verita Decl. ¶ 13.

The payment of the AME and Newport Settlement Amounts will comprehensively resolve all of Plaintiffs' claims asserted against the AME Defendants and Newport individually, derivatively on behalf of the Plan, and on behalf of the Class. Furthermore, Newport's $40 million payment will also resolve the AME Defendants' claims brought by the AME Defendants, although the AME Defendants will not receive any part of the Settlement Amount. And notably, because the

AME Defendants and Newport have deposited the full Settlement Amounts already, upon final approval of the Settlements, the funds will be ready for automatic disbursement according to the Plan for Distribution.

### 2.    Plan for Distribution and the Qualified Settlement Fund

The AME Settlement Amount and the Newport Settlement Amount will be disbursed in the same manner; they will be allocated pro rata to Settlement Class Members based on the ratio of the Settlement Class Member's account balance as of June 30, 2021 to the total value of all Settlement Class Member's account balances as of June 30, 2021, accounting for any distributions taken by participants between June 30, 2021 and the date that those balances were retroactively calculated.[6] AME Agmt. ¶ 4.1; Newport Agmt. ¶ 4.1.1.

Upon entry of an order granting Final Approval of the AME Settlement and the Newport Settlement, the Settlement Administrator will transfer the balance of the Qualified Settlement Fund (i.e., the AME and Newport Settlement Amounts, plus interest earned prior to distribution, less costs for notice and administration, attorneys' fees, costs, and service awards for the named Plaintiffs) to a Qualified Trust.[7] AME Agmt. ¶¶ 2.24, 2.15, 2.16; Newport Agmt. ¶¶ 4.2, 4.5. The Qualified Trust is a trust account that has been established by the AME Church to operate the

---

[6] Plaintiffs noted in their Motion for Preliminary Approval, that there is one small group of Class Members, totaling 15 people, who are not presently eligible to receive a full pro rata share of the Settlement Amounts because they took distributions of all or part of their respective plan balance from the Plan after June 30, 2021, but before the AME Church froze the Plan funds. (ECF No. 750-1 at 22). In its Preliminary Approval Opinion, the Court considered this group and noted that the parties have agreed on a distribution formula for these participants and that this distribution accommodation did not undercut the overarching primary issues of liability and damages, which predominate. (ECF No. 774, PA Opinion at 20).
[7] Plaintiffs intend for any and all other funds recovered in this Action to be deposited into the Qualified Trust detailed in both the AME Agreement and the Newport Agreement.

Legacy Fund.[8] AME Agmt. ¶ 2.15; Newport Agmt. ¶ 2.25. The funds held by the Qualified Trust will be invested by an independent professional investment advisor who is not an employee of the AME Church. AME Agmt. ¶ 2.2; Newport Agmt. ¶ 2.3. The AME Church has selected Disciplina Group LLC ("Disciplina") as the Advisor for the Qualified Trust. AME Agmt. ¶ 2.2; Newport Agmt. ¶ 2.3. Disciplina is an investment company based in Nashville, Tennessee that specializes in helping resource-constrained institutional investors manage their portfolios.[9] Disciplina will be a fiduciary of the Plan and will be required to maintain adequate insurance coverage in excess of $60,000,000. AME Agmt. ¶¶ 2.2, 4.4; Newport Agmt. ¶ 4.4.

The Settlement Administrator will oversee the transfer of the Net Settlement Amount from the Qualified Settlement Fund to the Qualified Trust. AME Agmt. ¶ 4.2; Newport Agmt. ¶ 4.2. For Participants that are eligible to take distributions, those Participants will be able to take distributions from the Qualified Trust of the Net Settlement Amount once the Settlement Amount has been transferred to the Qualified Trust, but "[i]n no event shall any Class Member be entitled to a distribution [of their pro-rata allocation of the Settlement Amount] prior to the transfer of the Settlement Amount to the Qualified Trust." AME Agmt. ¶ 4.1.2; Newport Agmt. ¶ 4.1.2. See also Lee Decl. ¶ 47(f). Notably, Settlement Class Members were *not required to submit a claim* to receive an allocation of their pro rata share of the Settlement Amounts.

---

[8] "Legacy Fund" refers to the portion of the Plan as it existed prior to the AME Church establishing a new Plan with Wespath after this litigation commenced. AME Agmt. ¶ 2.15; Newport Agmt. ¶ 2.16. The assets in the Legacy Fund are those that were acquired when Dr. Harris was Executive Director of the Plan: the remaining Symetra annuities, real property in Key Marco, Florida, and recovery for loans on assets as asserted in this litigation. AME Agmt. ¶ 2.15.

[9] The President and Chief Investment Officer of Disciplina is the former Chief Investment Officer of Vanderbilt University's multi-billion-dollar endowment; *see About Us – Our Team*, Disciplina Group LLC, https://disciplina.com/about (click on image on President & CIO Matthew W. Wright) (last visited June 5, 2025).

### 3.    Equitable Benefits Enforceable as Against the AME Defendants

The AME Defendants have further agreed to several business practice changes regarding the oversight and operation of the Plan. In particular, they have agreed to formally wind down and close the AMEC Department of Retirement Services and to transfer the Plan funds currently held at Symetra (to the extent permitted by federal tax law) to the Qualified Trust. AME Agmt. ¶¶ 3.4, 3.4.1(a)-(b), 3.4.2(a)-(b). The AME Defendants have agreed that no person or governing body of the AME Church will assess or accept any type of administrative, service, operational, management, or other such fee related to the Plan. The AME Defendants have also agreed that the Plan will be governed by the principles set forth in ERISA. *Id*. ¶¶ 3.4.2(c), (e). They implemented these changes as of August 24, 2024. *Id*. ¶¶ 3.4.3, 3.4.4. The AME Defendants also agreed to ensure the process by which contributions for the new retirement plan are received from the local churches and deposited with Wespath[10] is as quick, efficient, and direct as possible. Id. ¶ 3.4.5.

### 4.    Release of Claims

In exchange for the monetary relief and upon the Effective Date, Released Parties, as identified in the AME Agreement and the Newport Agreement, will receive a release of any and all claims in this Action or relating to the allegations of this Action (the "Released Claims"), which includes any Unknown Claims that could possibly exist with respect to the subject matter of the Released Claims. The Released Parties do not include the Estate of Dr. Jerome Harris or any of the other Non-Settling Defendants. *See* AME Agmt. ¶¶ 2.12, 2.25, 2.26, 10.1, 10.2, 10.7; Newport Agmt. ¶¶ 2.13, 2.26, 2.27, 10.1, 10.2, 10.7.

---

[10] Wespath is the investment entity that manages the AME Church's new retirement plan that was established in the aftermath of the catastrophic losses to the Plan and to which the contributions that are currently collected from local churches for AME Church employee retirement are transferred. Wespath is a general agency of The United Methodist Church and maintains one of the largest faith-based pension funds in the world.

### 5.    The Bar Order Provision in the Newport Agreement

The Newport Settlement Agreement provides that the Final Approval Order and Judgment to be entered by the Court will include a Bar Order prohibiting all parties to this lawsuit—including other Non-Settling Defendants—from asserting claims against Newport. *See* Newport Agmt. ¶¶ 2.6, 9.3.6. Newport's willingness to enter the Newport Settlement was contingent on it obtaining "complete peace" with respect to all pending and potential claims related to or arising out of the Action. Given that Plaintiffs and AMEC Defendants allege that Newport is a joint tortfeasor with Non-Settling Defendants, the Bar Order protects Newport from potential future claims from Non-Settling Defendants. *See* TN Code § 29-11-105. Importantly, however, the Bar Order expressly allows a Non-Settling Defendant to attempt to use the Newport Agreement, upon motion and after any judgment is rendered against such Non-Settling Defendants, to reduce any judgment by the amount of Newport's settlement. *See id.*; see also TN Code § 29-11-107(d) ("Nothing in this section limits the ability of the trier of fact to allocate fault to a nonparty to the suit, including, but not limited to, an immune third party or a settling party, person, or entity. Allocations of fault to nonparties shall be used only to determine the liability of named parties and shall not subject nonparties to liability in the action in which the allocation occurred or in any other action.").

### C.    Attorneys' Fees and Costs and Service Awards

Plaintiffs moved for an award of attorneys' fees of up to one-third of the combined Settlement Amounts including the additional interest earned prior to distribution and for an award of costs totaling $1,326,003.68 on May 7, 2025. *See* (ECF No. 806.) Plaintiffs also petitioned the Court for service awards in the amount of $20,000 for each of the appointed Class Representatives. The AME Defendants and Newport do not oppose Plaintiffs' requests, but the Settlements are not contingent upon the Court granting Plaintiffs' petition for attorneys' fees and costs. AME Agmt. ¶

13

5.2; Newport Agmt. ¶ 5.2. Any award for attorneys' fees, costs, or service awards shall be paid out of the Settlement Amounts. Newport Agmt. ¶ 5.1. Additionally, Class Counsel reserves the right to petition for additional awards of attorneys' fees, costs, or service awards from any future recovery from the Non-Settling Defendants.

## III.    THE COMPLETED NOTICE PLAN SATISFIES DUE PROCESS AND RULE 23.

In its Preliminary Approval Opinion, the Court concluded that "the notice plan for both settlements readily meets" the standards for notice under Rule 23. (ECF No. 774, PA Opinion at 23). The Notice Plan included (1) distribution of Long-Form Notices that included all relevant aspects of the Settlement Agreements, (2) establishment of a Settlement Website that contained relevant documents relating to the AME and Newport Settlements, and (3) explicit instructions for the process of objecting to or opting out of either Settlement Class. *Id.* at 24. The Court therefore authorized dissemination of Notice within 30 days of preliminary approval. *Id*. Verita Global, the Court-appointed settlement administrator, proceeded with the Notice Plan and has now successfully notified the Class of the AME and Newport Settlements and their rights under those Agreements to object to or opt-out of either or both Settlements.

### A.    The Class Notice Plan Was Effectively Administered.

Verita notified the Settlement Class directly, via first class mail—and email to the extent possible—of both Settlements on April 7, 2025. Verita Decl. ¶¶ 3-6; (ECF No. 783). Verita relied on detailed contact information provided by the AME Defendants for each Plan participant who was believed to be a Settlement Class Member. Verita Decl. ¶ 2; AME Agmt. ¶ 2.3; Newport Agmt. ¶ 2.10, 7.4. The Court found that the Notice Plan "readily met" the standards for class notice in part due to the unique reliability and accuracy of the records used to make contact with the Settlement Class. (ECF No. 774, PA Opinion at 22).

14

Verita mailed 4,391 notices in total and of those, Verita only received 228 return-to-sender mailings. Verita Decl. ¶ 7. Of that group, Verita was able to locate 116 new addresses for Class Members and mailed new notices. *Id.* Verita also emailed 2,970 notices. Verita Decl. ¶ 5. This process resulted in direct notice to over 95% of the Class. Verita Decl. ¶ 8. Verita also hosted key documents related to the litigation and the Settlements, including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards after it was filed on May 7, 2025, on a dedicated website[11] that Class Members could access for more information. Verita Decl. ¶ 9. Following the dissemination of notice, Class Counsel received calls from over 70 Class Members with questions about the Settlements. Class Counsel spoke with nearly all of those Class Members directly and left repeated voicemails with the rest. The inquiring Class Members primarily wanted to better understand the settlement process and the status of the litigation overall. Their response to the Settlements was positive. The Notice Plan more than adequately apprised the Class of the Settlements and provided the Class with ample time and opportunity to make informed decisions on participation in the settlement.

### B. There Were Two Objections and No Opt-Outs.

Settlement Class Members were given the option to object to or opt out of either the AME Settlement, the Newport Settlement, or both Settlements on or before June 6, 2025—60 days following the dissemination of notice on April 7, 2025. (ECF No. 775, PA Order at ¶¶ 19-20). This deadline was included in the notice form, published on the settlement website, and noticed on the Court's docket, *see* (ECF No. 783). The Class Notice clearly delineated the process by which Class Members could submit their Objections or Requests for Exclusion as to either or both Settlements, and that information was contained on the settlement website as well. Class Members have had

---

[11] *See* www.amechurchretirementsettlement.com (last visited June 5, 2025).

15

ample time and opportunity to object to or request exclusion from either or both Settlements. [12]

Only two objections were received. (ECF Nos. 833 and 834). No Class Members opted out of

either settlement. Based on the minimal objections and lack of requests for exclusion from the

class, it is clear that the Settlement Agreements were well received. The two concerns raised in the

two objections are addressed below.

## IV.    NOTICE WAS PROVIDED UNDER THE CLASS ACTION FAIRNESS ACT.

The Class Action Fairness Act, 28 U.S.C § 1715, ("CAFA") requires that Defendants notify

appropriate state and federal officials of the proposed settlement and to allow 90 days to pass

before final approval of the proposed settlement may be entered. *See* 28 U.S.C. § 1715(d). CAFA

notice was provided to the Attorneys General of all 50 States, as well as the Attorney Generals of

Washington, D.C., Puerto Rico, and the Virgin Islands on March 26, 2025 by the Newport

Defendants and on January 14, 2025 by the AME Defendants. More than 90 days will have passed

since CAFA notice was distributed as of the date of the Fairness Hearing.

## V.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS.

The Court should finally certify the following Settlement Class because it meets the

requirements of Rule 23(a) and Rule 23(b)(3):

> All persons who were participants, or were those participants' respective
> beneficiaries entitled to benefits, in the African Methodist Episcopal Church
> Ministerial Retirement Annuity Plan on June 30, 2021. Defendants are
> excluded from the Class.

When granting preliminary approval, the Court undertook a detailed analysis of the applicable

Rule 23 requirements and determined that it would "likely be able to certify the class for purposes

---

[12] In its Preliminary Approval Opinion, *see* (ECF No. 774 at 16), the Court noted that at least two members of the Class wrote to the Court with questions about the mechanics of settlement and the availability of their recovery. None of those class members have since objected to or requested exclusion from either Settlement.

of approving the settlements." (ECF No. 774, PA Opinion at 17). To make that determination, the Court evaluated the prerequisites for certification in Rule 23(a) and found that numerosity, typicality, commonality, and fair and adequate representation requirements were all satisfied. *Id.* at 17-19. The Court then conducted a detailed analysis of the Rule 23(b)(3) category of certification and found that the predominance, superiority, and efficiency factors were all satisfied. *Id.* at 19-21. Accordingly, with the requirements of Rule 23(a) and Rule 23(b)(3) met, the Court found that it would be likely to certify the class for purposes of approving the settlement. For the same reasons that the Court granted conditional certification, the Court should now grant final certification to the above delineated Class for purposes of judgment on the Settlements.

Likewise, the Court found Plaintiffs' Counsel adequate under Rule 23(g) and appointed them Class Counsel for purposes of effectuating the Settlements, and also found that the named Plaintiffs had, "fairly and adequately protected the interests of the Class as well as fulfilled their duties throughout litigation" and appointed them as class representatives for the settlement class. *Id.* at 21-22. For these same reasons, the Court should finally appoint the Class Representatives and Class Counsel to effectuate the Settlements.

## VI.    THE COURT SHOULD FINALLY APPROVE BOTH SETTLEMENTS.

Pursuant to Federal Rule of Civil Procedure 23(e), a class action settlement must be approved by the presiding court before it can become effective. On March 24, 2025, this Court granted preliminary approval to the proposed AME Settlement and the proposed Newport Settlement and thereafter directed notice to the Class of both Settlements. (ECF No. 775, PA Order at ¶ 12). The Class has now received notice from the approved Settlement Administrator according to the Notice Plan certified in the Court's Preliminary Approval Order. (*Id.* at ¶¶ 4-6, 9). Dissemination of notice to the Class was subject to oversight and supervision by Class Counsel, and both Settlements were well received by the Class. Since the 60-day period for objection and

opt-out by the Class has elapsed, the Court may now finally approve the Settlements. (*Id.* at ¶ 10).

**A.    Legal Standard for Final Approval Under Rule 23 and in the Sixth Circuit.**

To issue final approval, the Court must find that the Settlements are "fair, reasonable, and adequate" according to Rule 23(e). To make this determination, the Court must consider the four factors of Rule 23(e)(2)(A-D), evaluating whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided the class is adequate, taking into account:

       i.      the costs, risk, and delay of trial and appeal;

      ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

iv. any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also In re Family Dollar Stores, Inc., Pest Infestation Litig.*, 2023 WL 7112838, at 10 (W.D. Tenn. Oct. 27, 2023).

Sixth Circuit precedent favors and encourages settlements—particularly in class actions and other complex matters, like the case at bar, where inherent costs, delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could potentially obtain. *See, e.g., Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*") (noting "the federal policy favoring settlement of class actions"). In addition to evaluating settlements against the requirements of Rule 23(e), the Sixth Circuit considers seven factors (the *UAW* factors) to determine if a class action settlement is "fair,

reasonable, and adequate, many of which overlap with the Rule 23(e) factors"—(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631; (ECF No. 774, PA Opinion at 14-15).

### B.    The Settlements Both Satisfy the Requirements of Rule 23(e).

The AME Settlement and the Newport Settlement should be finalized because they each meet the requirements for final settlement approval in Rule 23(e) and are also fair, reasonable, and adequate based on the *UAW* factors.

### 1.    Rule 23(e)(2)(A) – Adequate Representation of the Class.

Class Counsel and the Class Representatives have more than adequately represented the Class, easily satisfying the first requirement of Rule 23(e). As the Court noted in its Preliminary Approval Opinion, Class Counsel have represented the named Plaintiffs and the Class itself "zealously at all times throughout the pendency of the MDL." (ECF No. 774, PA Opinion at 9). Class Counsel, alongside the Class Representatives, have forcefully investigated and tried this lawsuit for almost three years and engaged in thorough and diligent representation of the Class throughout the litigation process. (ECF No. 750-4, Lee Decl. ¶¶ 4-25). Class Counsel, for its part, has conducted more than two years of extensive discovery, exhaustively investigating the facts surrounding all relevant legal claims against Settling and Non-Settling Defendant and consistently advocating on behalf of all the Plan participants. Moreover, Class Counsel continues to zealously represent the Class against Non-Settling Defendants, as it currently prepares for expert discovery. The Class Representatives are all AME pastors (or their appointed representatives) and have been deposed and given evidence to support their claims and the claims of the Class. (ECF No. 774, PA

Opinion at 9). The Rule 23(e) requirement of adequate representation has been "easily met" and favors final approval. *Id.*

### 2.    Rule 23(e)(2)(B) - The Settlements Were Negotiated at Arm's Length.

Both the AME Settlement and the Newport Settlement were negotiated at arm's length, satisfying the second requirement of Rule 23(e). Both the AME and Newport Settlements were only achieved following exhaustive mediations with experienced and independent. (ECF No. 774, PA Opinion at 9-10). The AME Settlement was reached only after three mediations with Justice Holder of the Tennessee Academy of Mediators and Arbitrators and the Newport Settlement was reached only after a preliminary mediation with Justice Holder and two subsequent mediations with A. Lee Parks. (ECF No. 750-4, Lee Decl. ¶¶ 26-30, 31-36).

As the Court pointed out in its Preliminary Approval Opinion, "[t]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusions between the parties." (ECF No. 774, PA Opinion at 9-10 (citing *Gokare v. Fed. Express Corp.*, Case No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094870, at 3 (Nov. 22, 2013) (citation omitted)). Based on the presumptive neutrality of third-party mediators, the Court found that both Settlements "arose out of arms-length, non-collusive negotiations" and thus concluded that the settlements were the result of a procedurally fair process. (ECF No. 774, PA Opinion at 11 (citing Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.14 (6th ed. 2022)). The Court based its finding on the widely accepted general presumption of, "the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Id.* at 9 (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) (citation omitted)). As this Court noted, to date there is "absolutely no evidence to rebut the presumption that the settlements were achieved in the absence of fraud or collusion."

*Id.* at 10 n. 5. Therefore, the Rule 23(e)(2)(B) requirement of arms-length negotiation has been met and favors final approval. *Id.*

### 3.    Rule 23(e)(2)(C) - The Relief Provided to the Class is Adequate in Light of the Risks, Costs, and Length of Continued Litigation.

The relief provided by the AME Settlement and the Newport Settlement to the Class is adequate, especially when considered in the context of the ongoing litigation against the Non-Settling Defendants, and therefore satisfies the third requirement of Rule 23(e). Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In its Preliminary Approval Opinion, the Court noted that, "each consideration leads the Court to find that the relief provided by the settlements will be adequate for the class as a whole." (ECF No. 774, PA Opinion at 11).

**The Costs, Risk, and Delay of Trial and Appeal Favor Final Approval.** As the Court noted in granting preliminary approval, whether the $60 million settlement recovery is framed as 67.8% of the $88.4 million in missing assets, or 26.4% of the $227 million in potential damages, "the $60 million in settlement proceeds represents a reasonable recovery for the class." *Id.* (citing *Kohari v. MetLife Grp., Inc.*, No. 21-6146, 2025 WL 100898, at 10 (S.D.N.Y. Jan 15, 2025)). And, as the Court pointed out, any gap between maximum possible recovery and the settlement amount is, "the nature of settlement, and does not indicate a lack of fairness, reasonableness, or adequacy." *Id.* at 12 (citing *In re Family Dollar Stores, Inc., Pest Infestation Litig.*, 2023 WL 7112838, at 6-10 (W.D. Tenn., 2023). Simply put, the pecuniary relief is adequate in and of itself.

21

Yet, the significance of the Settlements' actual value to the Class becomes even more apparent when one considers "the time value of settling now and avoiding years more of litigation". *Id*. In this case, as in many class action cases, "acceptance and approval of the settlement [is] preferable to lengthy and expensive litigation with uncertain results." Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.44 (6th ed. 2022). Considering that a trial in the MDL is "at least one year away, and the conclusion of any appellate process…likely two years beyond that," the costs and risks of litigation and the potential harms of delay are apparent. (ECF No. 774, PA Opinion at 12). As the Court noted, due to the nature and extent of harms suffered by this particular Class, "time is a critical factor in achieving relief and recovering lost retirement funds for the members of the settlement class" and "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict." *Id*. (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich.)). Even if a verdict is won, the Class might not be able to enforce a judgment until 2028, at least seven or more years from the loss of the Class retirement funds. *Id*. In the meantime, the Class will continue to suffer the downstream financial consequences of losing their retirement funds, illustrating the enormous value of interim monetary relief from these Settlements.

**The Effectiveness of the Distribution Method Strongly Favors Final Approval.** As the Court indicated in granting preliminary approval, the proposed method of distributing relief promises to be, "fair, equitable, and *very effective* in delivering relief to the class." *Id*. at 13 (emphasis added). Settlement Class Members need not submit a claim to receive their share of the settlement proceeds, they will simply receive a pro rata share automatically based on the portion of their account balance on June 30, 2021 (the last quarter before the loss in value of the Plan was revealed) as compared to the total value of all Class Members' account balances on the same date.

AME Agmt. ¶ 4.1; Newport Agmt. ¶ 4.1. This ensures that all Class Members who did not opt out of the Settlements will "automatically obtain relief", making this proposed method of distribution per se effective in the context of Rule 23(e)(2)(C)(ii). *See Moeller v. Week Publications, Inc.*, 649 F. Supp. 3d 530, 542 (E.D. Mich 2023).

Furthermore, regarding implementation, as of May 30, 2025, the entire $60+ million balance from the AME and Newport Settlements has been deposited by Settling Defendants into the Qualified Settlement Fund. Verita Decl. ¶ 13. Immediately following final approval of the Settlements, the balance and any interest accrued (minus awards of attorneys' fees, costs, and service awards) will be transferred from the Qualified Settlement Fund to the Qualified Trust and allocated pro rata to the individual accounts of the Settlement Class Members. (ECF No. 774, PA Opinion at 13-14)*. See also* AME Agmt. ¶ 4.1; Newport Agmt. ¶ 4.1. Participants that are eligible to take distributions will then be able to take distributions from the Qualified Trust of their pro rata share. AME Agmt. ¶ 4.1.2; Newport Agmt. ¶ 4.1.2.

**The Terms of Proposed Attorney's Fees Favor Final Approval.** Plaintiffs moved the Court for an award of attorneys' fees up to one-third of the combined Settlement Amounts including any accrued interest. (ECF No. 803). This percentage is well within the range of typical attorneys' fees awards in the Sixth Circuit and is "standard in class actions". (ECF No. 774, PA Opinion at 13) (citing *Stewart v. Baptist Mem'l Health Care Corp.*, 2024 WL 4360602, at 8 (W.D. Tenn. Sept. 30, 2024) (approving an award of one-third of the gross amount of the settlement fund and collecting cases)). The AME Defendants and Newport do not oppose Plaintiffs' request.

In sum, due to the costs and risks of ongoing litigation relative to the benefits of interim relief, the effectiveness of the automatic distribution method stipulated in the Settlement Agreements, and the reasonableness of the request for attorneys' fees, the Rule 23(e)(2)(C)

requirement of adequate relief to the Class has been met and favors final approval.

### 4. Rule 23(e)(2)(D) - The Terms of the Settlements Treat Class Members Fairly and Equitably.

Per guidance on Rule 23(e)(2)(D), the Court should consider whether and to what extent, "the apportionment of relief among class members takes appropriate account of differences among their claims." Prelim. Approval Opinion at 14 (citing Fed. R. Civ. P. 23(e)(2), Committee Notes to the 2018 Amendment). The AME Settlement and the Newport Settlement treat every class member equitably because, per the Plan of Distribution contained in both Agreements, *see* AME Agmt. ¶ 4.1 and Newport Agmt. ¶ 4.1, the settlement proceeds will be apportioned proportionally amongst Settlement Class Members relative to their individual losses, as the Court noted in granting preliminary approval. (ECF No. 774, PA Opinion at 14). And the pro rata share will be calculated using the same formula for each Settlement Class Member. *Id.* The Rule 23(e)(2)(D) requirement of fair and equitable treatment of class members has been met and favors final approval.

In summary, because the AME and Newport Settlements each satisfy the four requirements of Rule 23(e)(2), and because each requirement favors final approval, the Court is authorized to order final approval of the settlement. However, as discussed above and in the Preliminary Approval Opinion, to remain consistent with Sixth Circuit precedent on final settlement approval, the Court should also consider the *UAW* factors to substantiate its final determination that the Settlements are fair, reasonable and adequate under Rule 23(e).

### C. Evaluation of the *UAW* Factors Further Supports Final Settlement Approval.

In the Sixth Circuit, the *UAW* factors provide guidance for determining whether a settlement is fair, reasonable, and adequate, but as the Court noted in its Preliminary Approval Opinion, the first three *UAW* factors closely mirror and have been addressed in the Rule 23(e) analysis, specifically (1) the risk of fraud or collusion, (2) the complexity, expense, and likely

24

duration of the litigation, and (3) the amount of discovery engaged in by the parties. (ECF No. 774, PA Opinion at 14-15). These three *UAW* factors all weigh strongly in favor of finally approving both Settlements, as do the remaining four *UAW* factors.

     **1.**     ***UAW* Factors 4, 5, and 7 Weigh in Favor of Final Approval as They Did in Granting Preliminary Approval.**

When the Court granted preliminary approval of the Settlements, it undertook a thoughtful analysis of the fourth, fifth, and seventh *UAW* factors and resolved each in the affirmative. Nothing has since changed the analysis of these factors and the conclusion that each supports final approval of the Settlements.

**Factor 4: The likelihood of success on the merits.** The task here is to "judge the fairness of a proposed compromise" by "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. In granting preliminary approval, the Court considered the claims brought in Plaintiffs' Second Amended Complaint against the AME Defendants and Newport and their respective motions to dismiss (as well as previous dismissal briefing) and "easily" found that the Settling Parties are using settlement to resolve a legitimate dispute. (ECF No. 774, PA Opinion at 15). Drawing on the reality that Plaintiffs' success against the Settling Defendants remains uncertain and that it could take several more years to obtain relief through trial and appeal, the Court concluded that Plaintiffs have "ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow." *Id.* (quoting *UAW*, 497 F.3d at 632). Class Counsel and Class Representatives thoughtfully weighed the costs and likelihood of success against the Settling Defendants at an eventual trial (and in collecting on any judgment) against the $60 million plus recovery achieved through the AME and Newport Settlements and made a reasonable determination that relief now is preferable to continued litigation. This factor favors final approval.

**Factor 5: Evaluation of the opinions of class counsel**. "The endorsement of the parties' counsel is entitled to significant weight and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, 2008 WL 4104329, at 26 (E.D. Mich. Aug. 29, 2008). This factor is resolved in favor of final approval because "class counsel has endorsed the settlement." (ECF No. 774, PA Opinion at 16).

**Factor 7: The public interest**. As the Court noted when granting preliminary approval, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." (ECF No. 774, PA Opinion at 16 (quoting *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Circ. 2019) (citation omitted)). Settlement between Plaintiffs and the AME Defendants and between Plaintiffs, the AME Defendants, and Newport is both a step towards providing complete relief to the Settlement Class and a step to conserve this Court's resources by narrowing the scope and complexity of the MDL. This factor favors final approval.

2.    ***UAW* Factor 6 Weighs in Favor of Final Approval Based on Effective Notice to Absent Class Members and Positive Reception of the Settlement Agreements.**

When granting preliminary approval of the Settlements, the Court reserved its analysis of the sixth *UAW* factor because relevant facts had "yet to be established" and the Court needed to wait for "the reaction of absent settlement class members". (ECF No. 774, PA Opinion at 16). Now, at the final approval stage, the Court can evaluate the reaction of absent class members. For reasons set forth below, this factor also resolves in favor of final approval.

As discussed above, Class Members had 60 days following the Notice Date during which to object or opt-out of either the AME or Newport Settlement Agreements. (ECF No. 775, PA Order at ¶¶ 13-15, 19-20). The Class was given sufficient notice of the June 6, 2025 deadlines and

both Settlements received an overwhelmingly positive reaction. As of the date of filing, there have only been 2 objections to the AME and Newport Settlements.[13] Not a single class member opted out of either Settlement. The "unanimous approval of the proposed settlements by the class members is entitled to nearly dispositive weight in the court's evaluation." *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983).

Accordingly, the *UAW* factors all weigh in favor of finally approving both Settlements.

**D.      The Two Objections Should be Overruled.**

Two Class Members objected to the AME and Newport Settlements. (ECF Nos. 833-834). To better understand both objections, Class Counsel contacted each objector and participated in phone calls to discuss their objections. In sum, both Objectors primarily take issue with Class Counsel's fee request, as well as the request for incentive awards to the Class Representatives. Both Objections, while seemingly well intentioned, should be overruled.

**1.      Rev. Golden's Objection Should Be Overruled Because His Grounds are Unsupported by the Record.**

Rev. Golden's filed Objection does not actually provide any grounds, instead just noting that his "objection applies to the entire class in that the requested maximum attorneys' fees and service awards should not be granted." (ECF No. 844). When Class Counsel spoke to him to further understand his concerns, however, he articulated that he believes the issues in this litigation are

---

[13] The Court, in granting preliminary approval, noted at least two class members who "have written to the Court [and] . . . raised questions about the mechanics of any settlement and the availability of their recovery." (ECF No. 774, PA Opinion at 16). Class Counsel believes that the reservations raised in these letters were going to be mitigated by Class Notice and publication of the AME and Newport Agreements on the settlement website. Regardless, as the Court pointed out, "these class members, as well as every other member of the settlement class, will have the opportunity to . . . raise objections during the notice period." Since the concerned class members did not object or opt-out, Class Counsel presumes their concerns have been alleviated and, if anything, their lack of objection or exclusion indicates that once the class members received notice and had the opportunity to review the Agreements, they concluded that the Settlements are fair and reasonable.

not complex enough to warrant Class Counsel's fee request. *See* **Exhibit B**. Rev. Golden, an attorney licensed in Florida, indicated that he came to this conclusion by reviewing other cases involving patents, employment discrimination, and personal injuries, and believes that everything he has seen is more complex than uncovering the fraud in this case is. *Id.* Rev. Golden has not provided us with any case law to support his position. As to the incentive awards to the Class Representatives, we understand that it is Rev. Golden's position that the Class Representatives should not receive any incentive awards because he does not believe they should have sued the AME Defendants in the first place, since as itinerant elders, he believes they are essentially suing themselves. Rev. Golden also informed us that he would not have filed suit himself against AME for this.

Taking these in turn, Plaintiffs respectfully disagree with Rev. Golden. This case has had over a dozen defendants, dozens of claims, counterclaims, cross-claims, and third-party claims, over 50 depositions, required review of over 1.5 million pages of documents, multiple rounds of motion to dismiss briefing, multiple motions to compel, a separate bankruptcy and adversary proceeding, and disclosure of 9 expert witnesses. There are not many cases that are more complex, procedurally or factually, let alone both. Further, unraveling the malfeasance here, and holding those responsible for a part in it, has been a complex and hard-fought battle. Plaintiffs highlighted much of that in their motion for attorneys' fees (ECF No. 806) and won't rehash that here, and that's also evidenced by the lawsuit several of Newport's insurers recently filed against Newport. In that action, the insurers are arguing that the Newport Settlement isn't reasonable (because it's too high) because, among other things, they contend that "Newport had no responsibility for overseeing the Plan's assets, advising on the Plan's investments, or supervising Harris." *Homesite Insurance Company et al. v. Newport Group Holdings, L.P, Newport Group, Inc.*, Case No. 3:25-

cv-02626 (N.D. Cal.) (ECF No. 1, ¶ 47).

Regarding incentive awards to the Class Representatives, Rev. Golden's position actually highlights exactly why these awards are warranted. As Plaintiffs have said before, many in the AME Church have criticized Plaintiffs for standing up and filing this case in the first place (although notably not one Class Member, even those that criticized the Plaintiffs, opted-out of the benefits obtained through the Class Representative's efforts). The Class Representatives here have risked real reputational harm by standing up on behalf of the Class to recover the lost retirement funds for everyone's benefit, and they've also been integral parts of the prosecution of this action, maintaining heavy involvement through the life of the case.[14]

### 2. Rev. Scott's Objection Should be Overruled Because it Lacks Specificity and Fails for the Same Reasons as Rev. Golden's.

Rev. Charles Larkin Scott, Sr., asserts several "grounds for objection." (ECF No. 833). His first two grounds stated relate to Class Counsel's attorneys' fee request, the third suggests the Settlement Funds should be allocated differently, and the fourth ground takes issue with the scope of the releases. Unfortunately, Rev. Scott doesn't know the bases for his Objection, and the content for the Objection was provided by his son, a lawyer, who didn't sign onto the Objection. That warrants overruling the Objection on its own. *See e.g. In re T-Mobile Customer Data Security Breach Litigation*, 2023 WL 11878507, *2 (W.D.Mo. June 29, 2023) ("condemn[ing] the practice

---

[14] Rev. Golden's objection also fails for additional technical reasons, beyond just a lack of specificity, including that it was not timely submitted, nor properly served on all parties as required by the Court's Order Granting Preliminary Approval of the Settlements. (ECF No. 775, ¶¶ 13-14 and Sections 8.3 and 8.4 of the Newport and AME Settlement Agreements). Specifically, Rev. Golden failed to timely submit his objection to the Court before 11:59 PM on June 6, 2025 (*see* ECF No. 834-1), and he also failed to serve a copy by email on Class Counsel and Defense Counsel as required by Section 8.3 of the Settlement Agreements. *See* Exhibit B, p. 6, reflecting this as emailed only to Matthew Lee and Bruce McMullen rather than the individuals identified in Section 8.3 of the Settlement Agreements.

of attorneys ghostwriting objections in class actions" and collecting cases doing the same); *see also Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 833 Fed. Appx. 430, 431 (6th Cir. 2021) (determining objections forfeited that are conclusory and undeveloped); *see also 1988 Trust for Allen Children v. Banner Life Insurance Company*, 28 F.4th 513, 521 (4th Cir. 2022) ("an objector to a class settlement must state the basis for its objection with enough specificity to allow the parties to respond and the court to evaluate the issues at hand."). Regardless of that, the Objection should be overruled on substantive grounds as well.

To better understand the bases for these grounds, Class Counsel contacted Rev. Scott to discuss his objection. During that call, Class Counsel asked Rev. Scott several questions about the first two grounds for his objection, including what he meant about the multiplier aspect of our fee request, what he meant when he referred to the "automatic distribution without claims process" and what comparable ERISA cases with similar fraud allegations he was referring to. *See* **Exhibit C**. Unfortunately, Rev. Scott informed us that he didn't know the answers to our questions because he had been provided the content by another individual as a favor. *Id.* We asked whether it would be more productive to involve that individual in a call rather than continuing to ask questions about the rest of his objection, and he said that it probably would and that he'd see if that individual could join us. While we still haven't been able to connect with that individual, we have learned that the individual referred to was Rev. Scott's son, an attorney in Florida. Rev. Scott was clear, however, that he is not represented by counsel at this time.

As to Rev. Scott's first stated ground, he notes his belief that Class Counsel's fees are "excessive and unconscionable." As support for that, Rev. Scott advances an argument that "this was a low-risk case that does not justify premium fees." Like with Rev. Golden's objection, Plaintiffs respectfully disagree that this was, or is, a low-risk case. As to his second stated ground,

30

Plaintiffs simply want to correct that the estimated net payouts to class members are actually just shy of 50% of Class Member's losses based on their June 2021 balance, and that doesn't include that they still had 30% of the June 2021 balance all along. So rather than the one-quarter of their June 2021 account balances that Rev. Scott suggests will be recovered if these Settlements receive final approval, Class Members will be restored to approximately 61% of their June 2021 Plan balances.

Rev. Scott's third stated ground is that the funds should be allocated in a manner that reflects Class Member's ages, rather than the amount of losses that they suffered. However, he has not offered any legal support for an allocation like this, nor are Plaintiffs aware of any. To the contrary, to prioritize some Class Members over others in this process could create conflicts amongst the Class that would likely lead to significant opt-outs and objections. It also may be discriminatory and unlawful to treat Class Members in the manner Rev. Scott suggests because it favors some Plan participants over others. That no one else has raised a concern about the allocation method is telling. Finally, Rev. Scott takes issue with the releases. His primary concern appears to be based on an understanding that more insurance policies may exist to aid in the recovery. As Plaintiffs have stated in their Motion for Preliminary Approval (ECF No. 750-1, pp. 24-25), Plaintiffs are satisfied that they have left no stone unturned in the search for assets they could recover regarding these two entities, nor that they could have recovered any additional settlement funds from either the AME Defendants or Newport[15].

---

[15] Rev. Scott's objection also fails for additional technical reasons, beyond just a lack of specificity, including that it is unclear whether it was actually mailed prior to the June 6, 2025 deadline for objections. (ECF No. 775, ¶¶ 13-14). Although Rev. Scott's signature on the objection is dated June 5, the envelope itself does not appear to have a postmark date prior to the Objection Deadline (ECF No. 834-1), and the tracking information from the envelope first indicates receipt by the Unites States Postal Service on June 7, at 6:55pm, which is after the Objection Deadline. (*see* **Exhibit D**).

## CONCLUSION

For the reasons set forth above and in the accompanying materials, Plaintiffs, the AME Defendants, and Newport respectfully request that the Court enter an order and final judgment (1) granting final approval of both the AME Settlement and the Newport Settlement; (2) finally certifying the Settlement Class and finally appointing Class Counsel and the Class Representatives; and (3) terminating the litigation between Plaintiffs and Settling Defendants and releasing claims of Settlement Class Members against the Settling Defendants.

Dated: June 12, 2025.

| **Interim Co-Lead Counsel** | |
|---|---|
| /s/ Matthew E. Lee<br>Matthew E. Lee<br>**MILBERG COLEMAN BRYSON**<br>**PHILLIPS GROSSMAN, PLLC**<br>900 W. Morgan Street<br>Raleigh, NC 27603<br>919-600-5000<br>Fax: 919-600-5035<br>mlee@milberg.com | /s/ Gregorio A. Francis<br>Gregorio A. Francis<br>**OSBORNE & FRANCIS**<br>**LAW FIRM, PLLC**<br>433 Plaza Real, Suite 271<br>Boca Raton, FL 33432<br>(561) 293-2600<br>Fax: (561) 923-8100<br>gfrancis@realtoughlawyers.com |
| **Liaison Counsel** | |
| J. Gerard Stranch, IV<br>**STRANCH, JENNINGS**<br>**& GARVEY, PLLC**<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, Tennessee 37203<br>(615) 254-8801<br>Fax: (615) 255-5419<br>gstranch@stranchlaw.com | |

| **Plaintiff's Steering Committee** | |
|---|---|
| Susan L. Meter<br>**KANTOR & KANTOR LLP**<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>818-886-2525<br>Fax: 818-350-6274<br>smeter@kantorlaw.net | Kenneth S. Byrd<br>**LIEFF CABRASER**<br>**HEIMANN & BERNSTEIN, LLP**<br>222 2nd Ave S<br>Nashville, TN 37210<br>615-313-9000<br>Fax: 615-313-9965<br>kbyrd@lchb.com |
| Dhamian Blue<br>**BLUE LLP**<br>P.O. Box 1730<br>Raleigh, NC 27602<br>919-833-1931<br>Fax: 919-833-8009<br>dab@bluellp.com | Richard Schulte<br>**WRIGHT & SCHULTE LLC**<br>865 S. Dixie Dr.<br>Vandalia, OH 45377<br>937-435-9999<br>Fax: 937-435-7511<br>rschulte@yourlegalhelp.com |
| Julie Nepveu<br>**AARP Foundation**<br>601 E Street, NW<br>Washington, DC 20049<br>(202) 434-2075<br>Fax: (202) 434-6424<br>jnepveu@aarp.org | |

33